(November 12, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER GILLIARD, Appellant.—Judgment of the Supreme Court, New York County (Leon Becker, J.), rendered December 12, 1985, convicting defendant-appellant, after a jury trial, of robbery in the first degree and sentencing him as a predicate felon to an indeterminate term of from 9 to 18 years' imprisonment, is unanimously modified, on the law, to reduce defendant's conviction of robbery in the first degree to robbery in the second degree, and is otherwise affirmed, and the matter is remitted to Supreme Court, New York County, for resentencing in accordance herewith.

On March 17, 1985, complainant Hamilton, a lone passenger in the last car of a downtown number three subway train, was approached by defendant who asked her for a match. After Hamilton replied that she had no match, defendant walked into the next car. When the train entered a long stretch of tunnel between 110th Street and 96th Street, defendant returned to the car, approached Hamilton and after making "jerky motions" with his hand in his pocket and saying "you know what this is", demanded her money. Believing defendant had a gun, Hamilton gave him her money, after which defendant searched her bag for additional money. Defendant never removed his hand from his pocket and Hamilton never saw a gun or its outline.

When the train thereafter stopped at 96th Street and Broadway, defendant exited the train and walked down the stairs to the underpass. As soon as he was out of her sight, Hamilton screamed to the police that she had been robbed by a black man in a jean suit or jacket. At the time, Police Officer Arthur Collins and Transit Police Officers Thomas Morrello and Bill Blunt were standing on a subway platform parallel to the downtown express platform on which Hamilton's train had stopped. Collins and Morrello had seen defendant talking to Hamilton in the last car of the number three express train and, then, seconds later heard her scream for help.

Using an underpass to get to the express platform, the three officers ran to Hamilton and received a description of her

robber. Immediately after receiving the description Collins ran through the same underpass defendant had taken and came out of the southwest station exit as Morrello took the southeast exit. As he reached the street level, Collins spotted defendant walking out of the southeast exit. Morrello then emerged from this same exit, right behind defendant. Both officers stopped defendant after he had walked about one quarter of a block east of the Broadway and 96th Street intersection. Defendant was patted down and no gun found. By this time only 2 to 3 minutes had elapsed since the officers first heard Hamilton's scream for help. Defendant was taken back to where Hamilton and Officer Blunt were waiting, where Hamilton identified him as the robber. A complete search of defendant revealed eight $1 bills, but no weapon.

At trial the court refused defense counsel's request to instruct the jury on the affirmative defense to robbery in the first degree (Penal Law § 160.15 [4]), but agreed to instruct the jury on the lesser included offense of robbery in the third degree. Without benefit of a charge on the affirmative defense, counsel nevertheless urged the jury to conclude that defendant had only pretended he had a gun. After requesting and receiving a clarification on the distinction between robbery in the first and third degrees, the jury found defendant guilty of first degree robbery. At sentencing, the court denied defendant's motion to set aside the verdict on the ground that the court had erred in failing to charge the affirmative defense. Defendant was then sentenced as noted, *ante*.

Viewing the evidence, as we must, in the light most favorable to the defendant *(People v Farnsworth,* 65 NY2d 734, 735) we conclude that defendant was entitled to a charge on the affirmative defense to robbery in the first degree, since there was sufficient evidence by which a jury could have concluded that the elements of the defense were proved by a preponderance of the evidence. Defendant persuasively argues that there are a number of factors in this case from which the jury, had it been instructed on the defense, could have concluded that defendant was not guilty of robbery in the first degree, because he had only pretended he was armed with a gun. The complainant never saw a firearm and never even testified that she could see the outline of one. Although defendant was promptly arrested 2 to 3 minutes after taking the stairs to the subway underpass, no firearm was found on him. While defendant was out of the officers' sight for most of this time, Officer Morrello, who took the exact same path defendant did in exiting to the street level, failed to discover

any weapon. It is noteworthy also that a subway underpass provides limited places to secrete a firearm.

Once defendant did reach the street level, the officers had him within their sight and never saw him discard a weapon. Additionally, the jury would have been entitled to infer that defendant would not likely have risked calling attention to himself by discarding something as prominent and deadly as a gun in a busy intersection in the middle of the afternoon. Neither did any witness come forward to say they saw defendant discard anything, although presumably, given the time and place, there were other people in the vicinity of defendant and the officers.

Viewing the evidence with inferences drawn in defendant's favor, it is clear that the evidence was sufficient to present to the jury the factual question of whether the preponderance of the evidence supported defendant's claim that he did not possess a firearm. *(See, People v Lockwood,* 52 NY2d 790, 791-792.) It was for the jury, then, not the court, to determine what weight to give this evidence. Even though in summation counsel argued to the jury that they should conclude defendant was only pretending he had a firearm, without the benefit of the requested charge, the jury was nevertheless left with the impression that even believing he only displayed what appeared to be a gun, they were nevertheless duty bound to find him guilty of first degree robbery. *(Supra,* at 792.)

While this constitutes reversible error *(People v Lockwood, supra),* we accept the People's argument on appeal that should we find reversible error, a new trial is nevertheless not required. The elements of robbery in the second degree, pursuant to Penal Law § 160.10 (2) (b), were proven beyond a reasonable doubt in that the jury necessarily found that defendant did display what appeared to be a gun in robbing the complainant. Accordingly, pursuant to our authority under CPL 470.15 (2) (a), we reduce defendant's conviction of robbery in the first degree to robbery in the second degree, and the matter is remitted to the trial court for resentencing on the reduced conviction. *(See also, People v Lyde,* 98 AD2d 650, 651.) Concur—Murphy, P. J., Kupferman, Carro, Milonas and Rosenberger, JJ.